[905 NYS2d 173]

In the Matter of ROBERT V. FONTE, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, May 11, 2010

APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Forrest Strauss* of counsel), for petitioner.

*Neal S. Comer*, White Plains, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition dated April 30, 2007, which contains five charges of professional misconduct. The charges against a corespondent, Tara Anne Laudonio, are substantively identical, and a joint hearing was conducted before Special Referee Steven C. Krane on November 6, 2008.

The Special Referee sustained all five charges against the respondent and Laudonio. The Grievance Committee now moves to confirm the report of the Special Referee with respect to the respondent, and to impose such discipline as the Court deems just and proper. The respondent cross-moves to disaffirm the Special Referee's report on the ground that the findings are not supported by the record or, in the alternative, to impose a sanction no more severe than public censure should the Court confirm the Special Referee's report.

Charge one alleges that the respondent was guilty of a breach of fiduciary duty and a failure to safeguard and ensure the transactional integrity of funds entrusted to him, incident to his practice of law in his attorney special accounts, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Fonte became a partner in the law firm of Bellettieri & Fonte in March 2004. The firm became known as Bellettieri, Fonte and Laudonio (hereinafter BF&L) in or about April 2004, when Laudonio joined the partnership. Fonte was a partner in the firm until November 17, 2006.

BF&L engaged almost exclusively in a transactional real estate practice, representing buyers, sellers, and lenders at residential and commercial real estate closings. From sometime on

or before the date of its inception, BF&L maintained one or more attorney special accounts at JP Morgan Chase Bank. All of the named partners as well as Peter Dengler, an associate, were fully authorized signatories on one or more of those attorney special accounts at all times between March 1, 2005 and November 17, 2006.

Beginning in or about March 2005 and continuing through November 2006, partner Anthony Bellettieri engaged in a pattern of dishonest and fraudulent manipulation of BF&L's attorney special accounts which resulted in the misappropriation, larceny, and/or conversion of more than $17 million from those accounts. The respondent failed to make an adequate effort to review or supervise the operations of those accounts during this period and failed to discover Bellettieri's fraud and larceny at a time when it could have been either mitigated or prevented.

Charge two alleges that the respondent failed to promptly pay or deliver funds, which were placed in his possession by clients for disbursement to third parties, to the clients or to third parties entitled to receive them, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]), based on the factual specifications of charge one. The respondent's failure to discover Bellettieri's escrow fund theft resulted in the dishonorment of numerous checks issued from the attorney special accounts of BF&L.

As a result of the Bellettieri's larceny and fraud and the respondent's failure to timely prevent or mitigate it, more than $3 million in checks issued between approximately October 1, 2006 and November 17, 2006, on one or more of BF&L's attorney special accounts, were dishonored by the bank when presented for payment.

Charge three alleges that the respondent failed to make reasonable efforts to adequately supervise Bellettieri's work and to ensure that all lawyers in BF&L were conforming to the disciplinary rules, in violation of Code of Professional Responsibility DR 1-104 (a)-(c) and (d) (2) (22 NYCRR 1200.5 [a]-[c], [d] [2]), by failing to adequately oversee the transactional activity of one or more of BF&L's special accounts, based on the factual specifications of charges one and two.

Charge four alleges that the respondents engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to timely respond to the lawful demand for his written response to one or more complaints of profes-

sional misconduct, based on the factual specifications of charges one and two.

The foregoing conduct produced more than 30 grievance filings against the respondent, which the Grievance Committee opened for investigation. In each instance, the respondent was asked to provide a written response to the allegations contained therein, along with a completed background questionnaire, within 10 days. The respondent submitted a written response to approximately 17 of those matters. In addition, the Grievance Committee requested additional information from the respondent at his examination under oath, which information was to be provided postappearance. Notwithstanding several extensions of the return dates for the submission of the remaining responses owed to the Grievance Committee, as well as the additional information requested, the last of which expired on March 30, 2007, the respondent failed to submit timely answers to those inquiries.

Charge five alleges that the respondent engaged in other conduct that adversely reflects upon his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102.(a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to adequately oversee the transactional activity of one or more of BF&L's attorney special accounts and/or to cooperate with the Grievance Committee's investigation into those allegations, based on the factual specifications of all of the aforesaid charges.

Based on the evidence adduced, the Special Referee properly sustained all five charges against the respondent. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report with respect to the respondent is granted, and his cross motion is denied in its entirety.

In determining an appropriate measure of discipline to impose, the Grievance Committee has expressed strong disagreement with the Special Referee's conclusion and the respondent's contention that he was a victim of Bellettieri's fraudulent scheme. The respondent's position is that Bellettieri acted alone, without his knowledge, and that he acted to hide his misconduct from the respondent. He submits that had he been able to obtain Bellettieri's testimony at the hearing, the extent of the obstruction he created to prevent the respondent from finding out what he was doing would be revealed. The division of labor at BF&L was such that the respondent and Laudonio attended closings, while Bellettieri ran the office, particularly the escrow accounts. The respondent issued checks

at closings only after confirming that the requisite funds were in BF&L's escrow account. He maintains that he had no reason to suspect criminal behavior on the part of Bellettieri, who was the firm's founder and "a pillar of the community." Moreover, the high volume of transactions engaged in on a daily and weekly basis, together with the onerous schedule of closings the respondent was required to attend, would have made it a practical impossibility for him to reconcile the firm's accounts while continuing to meet his duties to clients.

The Grievance Committee maintains that the respondent displayed a long-term, near total ignorance of his fiduciary duties as attorney and escrowee. He ignored multiple warning signs and blatantly apparent indicators of criminality which could have forestalled such a massive escrow fraud by Bellettieri. These included the $900,000 defalcation in BF&L's former escrow account at Fleet Bank in 2003, Bellettieri's refusal to produce the records for that account despite the respondent's requests, and the mysterious destruction of records maintained in BF&L's storage archive at that time. In the face of these warnings, greater oversight and immediate intervention was warranted.

With respect to the respondent, it bears noting that he was no stranger to the real estate and mortgage business. Far from being a business novice, he had an accounting background and had worked for an accounting firm for about three years after graduating from law school. He thereafter worked for a Manhattan law firm which handled real estate matters, where he was trained to represent buyers and sellers in residential and commercial transactions before starting his own practice and eventually entering a partnership with Bellettieri. He was comfortably drawing approximately $7,000 per week from BF&L during the period in question and knowingly permitted Bellettieri's commingling in order to allow BF&L to continue operating. The respondent's disciplinary history consists of one letter of caution, dated April 29, 2005, for his delay of approximately three years in resolving a $4,000 escrow problem arising from the sale of real property in Ozone Park, Queens. While it may have been difficult and time-consuming to obtain the necessary documents to establish that the subject premises was a two-family dwelling on the tax records as of 1937, the Grievance Committee found no valid reason for the respondent's excessive delay in turning over the first $1,000 to the seller, who had promptly vacated the premises pursuant to the possession agree-

ment. The respondent's failure to take any meaningful measures to resolve the tax record issue until after the filing of the underlying complaint resulted in the issuance of a letter of caution.

While the respondent was, to some extent, victimized by Bellettieri, he was also uniquely positioned to put an end to Bellettieri's scheme and thereby minimize damage to clients who had entrusted funds to BF&L. In this regard, he failed to uphold his nonwaivable fiduciary duty. Under the totality of circumstances, the respondent is suspended from the practice of law for a period of three years.

PRUDENTI, P.J., MASTRO, RIVERA, FISHER and MILLER, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted and the respondent's motion to disaffirm or, in the alternative, to impose a sanction no more severe than a public censure, is denied; and it is further,

Ordered that the respondent, Robert V. Fonte, is suspended from the practice of law for a period of three years, commencing June 10, 2010, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said three-year period upon furnishing satisfactory proof that during the said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable provisions of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Robert V. Fonte, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Robert V. Fonte, has been issued a secure pass by the Office of Court Administration, it

shall be returned forthwith to the issuing agency and the respondent, Robert V. Fonte, shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).