[953 NYS2d 92]

In the Matter of PATRICK H. JONES (Admitted as PATRICK HUGH JONES), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 17, 2012

58

### APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Gloria J. Anderson* and *Antonia Cipollone* of counsel), for petitioner.

*Patrick H. Jones*, New York City, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition dated August 9, 2010, containing six charges of professional misconduct, of which one charge (charge four) was withdrawn. Following a hearing, the Special Referee sustained charges one, two, three, five, and six. The Grievance Committee now moves to confirm the report of the Special Referee. The respondent does not oppose the Grievance Committee's motion, but requests that any sanction be limited to a public censure.

Charges one and two emanate from a common set of factual allegations, as follows:

Between in or about 2003 and at least May 19, 2008, the respondent was a named partner in the law firm of Jones, Ferguson & Campbell, LLP (hereinafter JF&C). During that period, JF&C was retained to represent the estate of Jean Barbara Pitter.

On or about July 7, 2005, JF&C opened account No. xxxxx9970 at Carver Federal Savings Bank to deposit and disburse funds relating to the Pitter estate (hereinafter the estate account). The respondent and his wife, Donna A. Campbell, who was also a named partner in JF&C, were the only signatories on the estate account. JF&C maintained the estate account through at least December 31, 2008.

During the period from July 7, 2005 through December 31, 2008, checks relating to the Pitter estate totaling $421,399.20 were deposited into the estate account. Funds from an unknown source totaling $8,600, including $2,600 in cash, were also deposited into the estate account.

On or about January 19, 2007 and May 17, 2007, earned legal fees in the unrelated Walcott and Clarke matters, in the respective amounts of $1,500 and $2,000, were deposited into the estate account. On or about December 19, 2007, a $5,000 retainer fee in the unrelated Cadogan-Moore matter was also deposited into the estate account.

During the same period, checks totaling $231,791.78 were disbursed in connection with the estate. From the $189,607.42 remaining balance of estate funds, $149,400 was disbursed by checks payable to JF&C, which were deposited into JF&C's business operating account No. xxxxx0630 (hereinafter the operating account) at Carver Federal Savings Bank. The respondent and Campbell were the only signatories on the operating account. Of the $149,400 disbursed to JF&C, Campbell disbursed checks totaling $142,200, and the respondent disbursed checks totaling $7,200.

Following the deposit of $149,400 of estate funds into the operating account, disbursements were made to the personal account maintained by the respondent and Campbell at Wachovia Bank, and the funds were used to pay for personal expenses such as housing and food.

After the $149,400 was disbursed into the operating account, Campbell disbursed $33,000 of the $40,207.42 remaining balance of estate funds to JF&C. The $33,000 was deposited into account No. xxxxx7560 at Carver Federal Savings Bank, titled "Jones, Ferguson & Campbell/IOLA Funds" (hereinafter the IOLA account). The respondent and Campbell were the only signatories on the IOLA account.

Of the $33,000 in estate funds that were deposited into the IOLA account, Campbell disbursed $11,200 to JF&C, and deposited those funds into the operating account. At least $20,292.82 of the $33,000 was disbursed by Campbell from the IOLA account in connection with various legal matters unrelated to the Pitter estate.

After the $33,000 was deposited into the IOLA account, $7,207.42 remained in the estate account. From the $7,207.42, Campbell disbursed an additional $6,000 to JF&C.

Campbell was immediately suspended from the practice of law in the State of New York on or about May 19, 2008 (2008 NY Slip Op 72439[U]). She was disbarred by order of this Court dated February 23, 2010 (73 AD3d 71), after submitting an affidavit of resignation wherein she admitted that she could not successfully defend herself on the merits against contemplated charges of professional misconduct based, inter alia, upon a complaint filed by Rowena Hansford alleging that Campbell had failed to account for funds belonging to the Pitter estate.

Charge one alleges that the respondent breached his fiduciary duty by failing to safeguard and ensure the transactional integrity of funds entrusted to JF&C incident to the practice of law, and by failing to discover or prevent the theft and/or misappropriation and/or commingling of said funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Charge two alleges that the respondent failed to ensure that his law partner, Campbell, was conforming to the disciplinary rules, and failed to discover or prevent the theft and/or misappropriation of funds entrusted to JF&C incident to the practice of law, at a time when, in the exercise of reasonable management authority, remedial action could have been taken to avoid or mitigate the theft and/or misappropriation of such funds, in violation of Code of Professional Responsibility DR 1-104 (a), (b) and (d) (2) (22 NYCRR 1200.5 [a], [b], [d] [2]).

Charge three alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by disbursing funds entrusted to him incident to the practice of law to pay JF&C's legal fees without first obtaining the client's permission, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). In connection with JF&C's representation of the Pitter estate, and the opening of an estate account relative thereto (charge one, above), the respondent disbursed check No. 107 from the estate account on or about December 9, 2005, payable to JF&C in the amount of $6,000, as "Estate of Pitter legal fees." On or about January 7, 2006, the respondent disbursed check No. 108 from the estate account, payable to JF&C in the amount of $1,200, as "legal fees" related to the Pitter estate. The respondent did not have specific authorization from Rowena Hansford, the executor, to disburse said fees to JF&C.

Charge five alleges that the respondent failed to properly title and identify an estate account, in violation of Code of Profes-

sional Responsibility DR 9-102 (b) (2) (22 NYCRR 1200.46 [b] [2]). In connection with JF&C's representation of the Pitter estate, and the opening of an estate account relative thereto (charge one, above), the estate account was entitled "Jones Ferguson & Campbell LLP." During the period from July 7, 2005 through at least December 31, 2008, checks and deposit slips related to the estate account were imprinted "Jones, Ferguson & Campbell LLP," and did not include the additional required language identifying the account as an "Attorney Special," "Attorney Trust," or "Attorney Escrow" account.

Charge six alleges that the respondent failed to maintain, for seven years after the events they recorded, the required bookkeeping records of activity in JF&C's accounts that concerned the practice of law, in violation of Code of Professional Responsibility DR 9-102 (d) (1), (2), (8) and (9) (22 NYCRR 1200.46 [d] [1], [2], [8], [9]). On or about September 18, 2003, JF&C opened business operating account No. xxxxx0630 (the operating account) at Carver Federal Savings Bank for the deposit and disbursement of funds relating to JF&C's practice of law. The respondent was a signatory on the operating account, which was titled "Jones Ferguson & Campbell, LLP." On or about July 30, 2004, JF&C opened IOLA mortgage escrow account No. xxxxx7560 (the IOLA account) at Carver Federal Savings Bank. The respondent was a signatory on the IOLA account. On or about July 7, 2005, JF&C opened account No. xxxxx9970 at Carver Federal Savings Bank (the estate account) for the deposit and disbursement of funds relating to the estate of Jean Barbara Pitter (charge one, above). The respondent was a signatory on the estate account. The respondent was asked to provide the Grievance Committee with various required bank and bookkeeping records for the aforesaid accounts, including ledger books or similar records. The respondent failed to maintain the required bank records. He obtained copies of various bank statements and canceled checks from the bank and provided them in response to the Grievance Committee's request. The respondent was not able to produce any contemporaneous ledger(s) or similar records of activity in the accounts for the period(s) at issue.

Based upon the evidence adduced, including the respondent's admissions, charges one, two, three, five, and six were properly sustained by the Special Referee. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the Court notes that Campbell, the respondent's wife

and law partner, was engaged in larcenous behavior, to wit, stealing funds from an estate account on which the respondent was also a signatory. However, by his own admission, the respondent never reviewed the banking records attendant to the estate account. Indeed, he failed to maintain them, as required. Moreover, the respondent had an opportunity to observe the transfer of estate funds into *other* accounts to which he was a signatory, including the operating account (records for which he admittedly reviewed) and his personal account (from which he profited by Campbell's larceny through the payment of personal expenses). The Court is mindful of the respondent's assertion that any sanction beyond a public censure will negatively impact his family.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of two years (*cf. Matter of Fonte*, 75 AD3d 199 [2010]; *Matter of Forman*, 250 AD2d 116 [1998]).

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Patrick H. Jones, admitted as Patrick Hugh Jones, is suspended from the practice of law for a period of two years, commencing November 16, 2012, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than May 16, 2014. In such application, the respondent shall furnish satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Patrick H. Jones, admitted as Patrick Hugh Jones, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Patrick H. Jones, admitted as Patrick Hugh Jones, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).